SEÍN, PLAINTIFF AND APPELLANT, *v.* GONZÁLEZ ET AL., DEFENDANTS AND APPELLEES.

Appeal from an Order of the District Court of Aguadilla Concerning a Memorandum of Costs.

No. 1715.—Decided March 5, 1918.

JURAT — OBJECTION. — A jurat which omits entirely each and every detail prescribed by the law for safeguarding the identity of the affiant ought not to receive the sanction of the trial court in the face of timely objection.

ID.—AFFIDAVIT—IDENTIFICATION—ATTORNEY.—The presentation by an attorney as an officer of the court of an affidavit purporting to have been made by him as an attorney in the case and to bear his signature, if not in itself technically sufficient to supply the want of proper identification in the jurat, is at least enough to satisfy the trial judge, as a matter of fact and beyond any reasonable doubt, of the genuineness of the signature.

ID.—ID.—LAWS—DISCREPANCY BETWEEN ENGLISH AND SPANISH TEXTS—REG-ISTRY OF AFFIDAVITS.—The Spanish version of the Act of 1908, amplifying section 2 of the Act to establish a registry of affidavits or declarations executed before notaries and other officers, of May 2, 1906, should prevail over the English text, as it is more in line with the historical development of the idea expressed therein and does no violence to the law of 1903 as amended in 1910.

The facts are stated in the opinion.

*Mr. José D. Rodríguez* for the appellant.

*Messrs. Francis & Soto* for the appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Objection was made in the district court to a memorandum of costs and disbursements upon the following grounds:

"1st. That said memorandum of costs and disbursements is void, as it has not been made according to law.

"(a) Because the jurat does not comply with the provisions of section 3 of the Affidavits Act, approved March 12, 1908.

"(b) Because the claimant's attorneys herein are Francis & Soto, said law partnership being composed of Juan B. Soto and Hugh R. Francis, and the memorandum has been sworn to by Soto before Francis; that is, the attorneys for the defendants have been sworn before themselves, which renders said jurat null and void.

"2nd. That the attorney fees in said memorandum are excessive.

"(a) That the intervention (*tercería*) by the plaintiff was to annul an attachment levied by Jesús Ma. González to secure the sum of $640 which Rafael García Soler owed him. That the defendants filed a demurrer to the complaint, which was overruled, and that afterwards they answered the complaint and were present at the trial, which was had rapidly and without difficulty.

"(b) That the fees charged are $200; that is, almost one-third of the sum defended by Francis & Soto, and on that account we deem it excessive."

The point made under the first subdivision of the first

ground of objection was well taken. The jurat in question reads as follows:

"Subscribed and sworn to before me, in San Juan, P. R., this sixth day of July, 1917. (Signed) Hugh R. Francis, Notary Public."

Section 3 of the law of 1908 prescribes a simple form easily followed, containing certain essential safeguards as to the identity of affiant, and, while a substantial compliance therewith is perhaps sufficient, a jurat which omits entirely each and every detail so prescribed ought not to receive the sanction of the trial court in the face of timely objection. 2 C. J. 360; 1 R. C. L., p. 769, sec. 14.

In the case at bar, however, affiant was a well-known attorney representing one of the parties, and the presentation by him as an officer of the court of an affidavit purporting to have been made by him as an attorney in the case and to bear his signature, if not in itself technically sufficient to supply the want of proper identification in the jurat, was at least enough to satisfy the trial judge, as a matter of fact and beyond any reasonable doubt, as to the genuineness of the signature. Moreover, the memorandum contained but two items, to wit, clerk's fees, $5, and attorney fees, $200, as to which neither plaintiff nor the court could have been misled or deceived. In the circumstances the error was harmless.

The record before us does not disclose facts sufficient to enable this court to pass upon the second subdivision of the first ground of objection.

We suggest, however, that the question may as well be avoided in practice. As to the advisability of this course see 2 C. J. 330; 1 R. C. L. 763, sec. 6.

Counsel for appellees deny the averment contained in the second ground of objection as to the amount involved and insist that the sum sought to be recovered, and the amount to secure which the attachment was levied, is $3,000. We have nothing whatever but these contradictory statements

upon which to base an opinion as to the reasonableness of
the sum allowed as attorney fees and therefore cannot say
that the court below abused its discretion.

Appellant also insists that an affidavit before a notary
is a nullity.

A notary, as defined in article 1 of the Spanish Notarial
Law, was "the public official authorized to certify contracts
and other extrajudicial instruments in accordance with law."

The duties of the office were by the terms of article 16
of the same law "incompatible with all other offices which
carry similar power  *  *  *."

Historically, these two articles not only served to limit
the scope and extent of notarial powers, but represent a
clearly defined tendency to relieve certain judicial or quasi-
judicial officials of various ministerial functions, the exer-
cise of which was regarded as an invasion of the province of
the "contractual" as distinguished from the "governmental"
and the "judicial" notary. 1 Fernández, *Tratado de Notaría,*
Titles I to III.

This trend towards an exclusive jurisdiction in favor of
the notary seems to have survived the transfer of sovereignty
and is accentuated by the addition of the word "only" in
section 1 of "An Act to regulate the practice of the notarial
profession in Porto Rico" (Laws 1906, page 143), which
reads as follows (italics ours):

"Notaries are the *only* officials authorized to certify contracts and
*other extrajudicial instruments* that are executed in their presence
in accordance with the law."

Formerly, as now, by express provision of the Civil Code
oaths were not permitted in matters of contract and notaries
had no power to administer the same, nor to take affidavits;
but here also is found a disposition to insist upon a broad-
ening of powers in this regard through the proposed elimi-
nation of the oath in judicial proceedings as in the law of
contracts, accompanied by the further innovation of reducing

the testimony of witnesses or prospective witnesses to writing in the form of a deposition before a notary. 1 Fernández, page 600, sec. 703.

In 1903, Laws p. 39, the legislature expressly conferred upon notaries full power to administer "all oaths, affidavits or affirmations necessary or required by law."

As pointed out in *López* v. *Meléndez,* 22 P. R. R. 145, section 4 of "An Act to establish a registry of affidavits or declarations executed before notaries and other officers," approved March 12, 1908, after setting forth that "all notaries, Justices of the Supreme Court, judges of district and municipal courts, and justices of the peace, the Secretary of Porto Rico and all other heads of the executive departments may authorize all affidavits or declarations herein referred to in this law," adds a clause providing (italics ours), in English, that "notaries, however, may authorize such affidavits or declarations *only* when they have reference to facts, acts or contracts of a mere private nature," and, in Spanish, that "*only* notaries, however, may authorize such affidavits or declarations when they have reference to facts, acts or contracts of a mere private nature."

But, as also indicated in *López* v. *Meléndez* in 1910, the legislature by amendment amplified and re-enacted section 2 of the law of 1903, which, in so far as pertinent to any question involved herein, now reads as follows:

"Section 2.—All oaths, affidavits or affirmations, necessary or convenient or required by law, may be administered within Porto Rico and a certificate of the fact given, by any judge of the Supreme Court, or by any judge of a District Court, or by any secretary of either of the above-mentioned courts, or by any justice of the peace or municipal judge, or by any notary public, or by any Commissioner of the United States for the District of Porto Rico. ＊ ＊ ＊"

In the case last above-mentioned we held, as to the power of a municipal judge to take an affidavit of service of summons, that the Act of 1910, as the last word of the legislature upon this subject, must control in disposing of any doubt

arising from the discrepancy between the Spanish and English texts of the law of 1908.

The Spanish version of that law is in line with the historical development of the idea expressed therein and does no violence to the law of 1903 as amended in 1910. The clause as it reads in English would emasculate the law last abovementioned, in so far as notaries are concerned, and to that extent would defeat at once the plain purpose of the legislature as both previously and subsequently expressed—a purpose in accord with the modern American practice and with the aspiration of the notarial profession under the Spanish law.

Whatever the motive or the true significance of the clause in question may be, and as to this we need not speculate at this time, it is hardly conceivable that by continuing in full force and effect the law of 1908, including section 4 thereof, the legislature intended in 1910 to negative, to the extent indicated by the English text of that section, the broad powers expressly conferred upon notaries public.

The order appealed from must be

*Affirmed.*

Justices Wolf and del Toro concurred.

Chief Justice Hernández and Justice Aldrey took no part in the decision of this case.